1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9             FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   The California Labor and Workforce                No. 2:21-cv-02327-KJM-KJN
     Development Agency, et al.,
12                                                     ORDER
                              Plaintiffs,
13
14          v.
15   CompuCom Systems, Inc.,
16                            Defendant.
17

18          In this action, plaintiff William Raymond asserts employment claims on his own behalf

19   and under the California Private Attorneys General Act (PAGA).  Defendant CompuCom System,

20   Inc. (CompuCom) moves to compel arbitration of all of the claims except the claim asserted

21   under the PAGA.  For the reasons set forth below, the court **holds the motion to compel**

22   **arbitration in abeyance**.

23   I.     **BACKGROUND**

24          CompuCom employed Raymond as a Field Technician in 2010.  Compl. ¶ 19, Not.

25   Removal Ex. A, ECF 1-1.  Raymond was hired on an at-will basis.  *See* Arbitration Agreement at

26   4, Griffin Decl. Ex. A, ECF No. 7-1.  In October 2016, CompuCom adopted a new arbitration

27   policy.  Mot. at 2–3, ECF No. 7.  It then sent an arbitration agreement to all of its employees in

28   the United States by email and mail, published a notice of the agreement in the company's weekly

                                                1

1   newsletter, and posted the agreement electronically in its company handbook.  Griffin Decl.

2   ¶¶ 4-7, ECF No. 7-1.  Raymond notes that throughout his employment CompuCom sent him

3   "important documents for signature[,]" including an acknowledgment that he received a copy of

4   the employee handbook.  Raymond Decl. ¶ 9, ECF No. 9-1.  Raymond does not recall receiving

5   any emails or letters about the arbitration agreement.  *Id.* ¶¶ 17–20.  He estimates he received

6   thirty to fifty emails a year about other company policies.  *Id.* ¶ 12.  He believes he read them all,

7   but admits he may have missed one or two.  *Id.*

8          CompuCom's arbitration agreement covers "all claims or controversies, past, present or

9   future, including without limitation, claims arising out of or related to . . . employment . . . ."

10  Arbitration Agreement at 1.  It covers claims for "unfair competition, wages, minimum wage and

11  overtime or other compensation claimed to be owed, meal breaks and rest periods, . . . [and]

12  equitable claims. . . ."  *Id.*  It also includes a class and collective action waiver.  *Id.* at 2.

13  Employees can opt out of the agreement by sending CompuCom a signed form.  *Id.*  According to

14  the arbitration agreement, it did not require an employee's "signature to be effective and binding"

15  because "continuation of employment" constituted acceptance.  *Id.* at 4.  Raymond continued

16  working several years after CompuCom first sent the arbitration agreement to its employees.  *See*

17  Compl. ¶ 19.

18         Raymond filed this action in state court, asserting several claims on behalf of a proposed

19  class based on Compucom's alleged failures to pay wages and overtime, issue reimbursements,

20  provide wage statements, and similar matters.  *See generally* Compl.  As noted, he also asserts a

21  claim under the PAGA.  *See id.* ¶¶ 29–37.  CompuCom removed the case to federal district court,

22  citing this court's diversity jurisdiction, *see generally* Not. Removal, ECF No. 1, and now moves

23  to compel arbitration of the claims, apart from the PAGA claim, on an individual basis, Mot. at 1.

24  CompuCom's motion does not cover the PAGA claim, however CompuCom has indicated it

25  plans to move to compel arbitration of that claim as well.  Joint Status Report at 5, ECF No. 18.

26  The current motion is fully briefed and the court submitted on the papers.  Opp'n, ECF No. 9;

27  Reply, ECF No. 12; Min. Order, ECF No. 13.

1   **II.   LEGAL STANDARD**

2   "Generally, in deciding whether to compel arbitration, a court must determine two

3   'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and

4   (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th

5   Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  The party

6   moving to compel arbitration must prove these elements by a preponderance of the evidence.  *See*

7   *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  If the gateway requirements

8   are satisfied, arbitration is mandatory.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18

9   (1985).  "A court may invalidate an arbitration agreement based on 'generally applicable contract

10  defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or

11  that derive their meaning from the fact that an agreement to arbitrate is at issue.'"  *Kindred*

12  *Nursing Centers Ltd. P'hip v. Clark*, 137 S. Ct. 1421, 1426 (2017) (citation omitted).  "When

13  deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should

14  apply ordinary state-law principles that govern the formation of contracts."  *First Options of*

15  *Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

16  **III.   ANALYSIS**

17  Raymond advances two primary arguments in opposition to CompuCom's motion.  He

18  argues the arbitration agreement is invalid because it violates the statute of frauds.  Opp'n at 13–

19  14.  The statute of frauds requires certain contracts to be signed and in writing, including an

20  "agreement that by its terms" cannot "be performed within a year."  Cal. Civ. Code § 1624(a)(1).

21  This rule "only prohibits enforcement of contracts that cannot under any circumstances per

22  performed within one year."  *Hicks v. Macy's Dep't Stores, Inc.*, No. 06-02345, 2006 WL

23  2595941, at *3 (N.D. Cal. Sept. 11, 2006) (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654,

24  671 (1988)).  At-will employment contracts do not fall within the statute of frauds because the

25  employment relationship could end within a year.  *Foley*, 47 Cal. 3d at 673.  "The statute of

26  frauds likewise does not apply to an arbitration agreement attached to an employment agreement

27  of indefinite duration." *Hicks*, 2006 WL 2595941, at *3.  As an at will employee with no defined

28  end date to his employment Raymond cannot succeed by citing the statute of frauds.

1    Raymond also argues, however, that he did not agree to arbitrate at all.  He claims he did

2    not receive, read or sign any arbitration agreement.  Opp'n at 9.  Accepting without deciding his

3    position in this respect, Raymond nevertheless may be bound by the arbitration agreement as a

4    result of the combined effect of various California legal presumptions and interpretive rules, as

5    reviewed below.

6    First, under California law, an employer can "unilaterally alter the terms of an

7    employment [contract]"—assuming the change does not violate a statute, such as the Labor Code,

8    or some other contract.  *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 619–20 (2009).

9    Second, if an employer changes the terms of employment by adding an arbitration policy

10    and gives notice of that change, and if employees who receive notice then continue their

11    employment, then they have "impliedly consented to the arbitration agreement."  *Diaz v. Sohnen*

12    *Enterprises*, 34 Cal. App. 5th 126, 130 (2019); *accord Davis v. Nordstrom, Inc.*, 755 F.3d 1089,

13    1093 (9th Cir. 2014) ("Where an employee continues in his or her employment after being given

14    notice of the changed terms or conditions, he or she has accepted those new terms or

15    conditions.").  An employee consents even if he does not sign the arbitration agreement or

16    otherwise affirmatively consent to the change.  *See Davis*, 755 F.3d at 1093.

17    Third, "a letter correctly addressed and properly mailed is presumed to have been received

18    in the ordinary course of mail."  *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 421 (2000);

19    Cal. Evid. Code § 641 (providing statutory basis for this principle).  A person cannot defeat this

20    presumption by simply asserting he "does not recall" receiving the mailed letter.  *Chavez v. Bank*

21    *of Am.*, No. 10-653, 2011 WL 4712204, at *8 (N.D. Cal. Oct. 7, 2011); *Murphy v. DIRECTV,*

22    *Inc.*, No. 2:07-6465, 2011 WL 3319574, at *2 (C.D. Cal. Aug. 2, 2011), *aff'd on a separate*

23    *question*, 724 F.3d 1218 (9th Cir. 2013).  Nor is an uncorroborated denial ordinarily sufficient.

24    *See Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 963 (9th Cir. 2001).  Rather,

25    some other evidence is normally necessary to overcome the presumption.  *See, e.g., Chavez*, 2011

26    WL 4712204, at *9 (evidence of an incorrect address on file).  This rule is designed to avoid

27    "swearing contests" about whether a letter was mailed and received.  *Id.*

Together, the application of these rules could show Raymond is bound by the arbitration agreement.  CompuCom changed its policy, which it was allowed to do unilaterally.  It says it gave notice of the change by mail.  While Raymond does not recall receiving any letters about the change, he offers no evidence to bolster his position, other than his inability to recall receiving notice.  Raymond Decl. ¶¶ 18–19.  Raymond continued working for the company after the change in arbitration policy.  Under California law, Raymond's signature was not required for an agreement to arbitrate to have been formed; nor was he required to read the agreement before it could take effect.

CompuCom, however, has not offered the evidence that would be necessary to set a presumption of Raymond's receipt of notice and the other legal rules in motion.  To rely on the presumption that Raymond received the mailed notice of the company's new policy, CompuCom must show the policy was properly mailed and addressed.  *Craig*, 84 Cal. App. 4th at 421.  It has not.  It has offered the declaration of its current human resources and compliance manager, who reports the company engaged a third party to mail the arbitration agreement to all of its employees.  Griffin Decl. ¶¶ 5, 8.  The company has offered no documentary evidence, however, from this third party or otherwise: no declaration, no records, no mailing list, no postmarked envelope or proof of service, no confirmation that Raymond's copy was not returned as "undeliverable."  CompuCom notes that some letters were in fact returned, *see id.* ¶¶ 8–9, but this observation alone is insufficient to raise the presumption as to Raymond.  Nor does the record confirm that any letters were actually mailed.  CompuCom offers only a copy of an email from an unnamed employee of a third-party entity that it allegedly arranged to mail the agreements.  Griffin Decl. Ex. B at 6.  This person, whose name and email address are redacted,[1] wrote a one-line response dated October 14, 2016 to CompuCom's request for confirmation that all the letters to employees regarding the arbitration agreement were mailed: "Planning to deliver to post office

---

[1] The unilateral redaction does not comply this court's local rules on redaction, *see generally* L.R. 140, but also does not appear to conceal information material to resolving this motion.  Counsel is cautioned in the future to strictly comply with the local rules on sealing and redaction, and all applicable law, which articulate a strong presumption in favor of the public filing of all information related to a case on the court's docket.

today." *Id*.  Nothing supports the conclusion that CompuCom's current human resources director has any independent first-hand knowledge about the mailing of employee notices.  She appears to have relied solely on the company's records and her general "familiarity" with the company's "business operations and employment practices." *Id.* ¶ 1.  The court cannot conclude on this record that CompuCom or a third party acting on its behalf mailed a copy of the arbitration agreement to Raymond at his then-current address so as to benefit from the presumption that Raymond received the mailing.

CompuCom also claims it gave notice to Raymond and others by email, in the company's newsletter, and on the company's internal website.  *See* Griffin Decl. ¶¶ 4, 6, 7, 9.  It cites no California law to support this claim; nor does it point to any recognized presumption analogous to the mailing presumption applicable to notice by email, electronic newsletter and website.  If Raymond actually received and opened an email, read a newsletter or visited the company website, even if he cannot remember doing so, he might be held to the arbitration agreement.  But on this record, the court cannot draw that conclusion as a matter of law.  Too much is uncertain and unproven about the content and circumstances of CompuCom's electronic and other communications.  What was the content of the various communiques and how prominent was the language putting employees on notice?  Did Raymond have the opportunity to check and read the emails or review the website and handbook?  What evidence can CompuCom produce that shows the emailed notices, website postings or handbook contents were effective in providing Raymond an opportunity to know about the arbitration agreement and understand its terms?  These kind of factual disputes must be resolved before the court can adjudicate the motion to compel arbitration.  "[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *See Hansen v. LMB Mortg. Servs., Inc.*, 1 Fed.4th 667, 672 (9th Cir. 2021).

## IV.   CONCLUSION

The court **holds the motion to compel arbitration in abeyance** until the disputed facts above can be resolved through a trial or equivalent evidentiary proceeding.  The parties shall file

1   a joint status report within 21 days providing proposed dates for trial and clarifying whether they

2   believe trial should be by jury or a bench proceeding.  The report shall include trial plans for both

3   parties, identifying witnesses, exhibits, and time necessary to resolve the issue of assent.

4          IT IS SO ORDERED.

5   DATED:  July 26, 2022.

6

CHIEF UNITED STATES DISTRICT JUDGE