**AIMAN-SMITH & MARCY**
PROFESSIONAL CORPORATION

Randall B. Aiman-Smith #124599
Reed W.L. Marcy #191531
Hallie Von Rock #233152
Brent A. Robinson #289373
Lisseth Bayona #338135
7677 Oakport St. Suite 1150
Oakland, CA 94621
T 510.817.2711
F 510.562.6830
ras@asmlawyers.com
rwlm@asmlawyers.com
hvr@asmlawyers.com
bar@asmlawyers.com
lb@asmlawyers.com

Attorneys for Plaintiff Raymond

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DEAN RAYMOND, | Case No.: 2:21−CV−02327−KJM−KJN |
| Plaintiff, | |
| v. | **PLAINTIFF'S BRIEF IN OPPOSITION TO STAY OF REPRESENTATIVE PAGA ACTION** |
| COMPUCOM SYSTEMS, INC., a Delaware corporation, *et al.*, | |
| Defendants. | Hearing Date: Oct. 13, 2023<br>Hearing Time: 10:00 a.m.<br><br>Hon. Kimberly J. Mueller<br>Courtroom 3, 15th Floor<br>Robert T. Matsui United States Courthouse<br>501 I Street<br>Sacramento, CA  95814<br><br>Action Filed October 19, 2021<br>Action Removed December 16, 2021 |

# TABLE OF CONTENTS

A.  CompuCom Violates This Court's Order by Briefing Dismissal Arguments Raised Neither in the Order Nor in the Joint Status Report. ...................................................... 6

B.  CompuCom's Preemption Arguments Fail. ........................................................................ 6

C.  A Stay Is Discretionary, Not Mandatory. ......................................................................... 11

D.  CompuCom Fails to Discuss, Let Alone Meet, Its Burden Under *Landis*. ................... 12

  1.  The Stay Threatens Irreparable Harm by Delaying State Law Enforcement as to Ongoing Violations of the California Labor Code. ...................................................................... 14

  2.  The Stay Threatens Irreparable Harm to Plaintiff's Ability to Investigate the Merits of the State's Claims. ............................................................................................................... 14

  3.  No Recognized Harm Flows to CompuCom from Continued Proceedings. ............................. 15

  4.  No Judicial Economies Flow from a Stay. ....................................................................... 17

  5.  Cases Cited by CompuCom Are Not Binding and Distinguishable. ........................................ 19

E.  Conclusion. ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Adolph v. Uber Technologies, Inc.,* 14 Cal.5th 1104 (2023) ................................................................. 6

*Bains v. Moores,* 172 Cal.App.4th 445, 484 (2009) ........................................................................... 15

*Broussard v. First Tower Loan, LLC,* 150 F. Supp.3d 709 (E.D.La. 2015) ......................................... 12

*Burrola v. U.S. Sec. Assocs.,* No. 3:18-cv-00594-BEN-JLB) 2019 U.S.Dist.LEXIS 20333 (S.D.Cal.
    2019) ................................................................................................................................................. 19

*Citrus Mktg. Bd. v. J Lauritzen A/S,* 943 F.2d 220, 224 (2d Cir. 1991) .............................................. 12

*Collins Radio Co. v. Ex-Cell-O Corp.,* 467 F.2d 995 (8th Cir. 1972) .................................................. 12

*Forrest v. Spizzirri,* 62 F.4th 1201, 1204, *cert.* filed, No. 22-1218 (Jun. 16, 2023) (9th Cir. 2023) ........ 12

*Gray v. Conseco, Inc.*, Case No. SA CV 00-322 DOC (EEx)) 2000 U.S.Dist.LEXIS 14821 (C.D.Cal.
    2000) ................................................................................................................................................. 19

*Hermosillo v. Davey Tree Surgery Co.*, No. 18-CV-00393-LHK, 2018 U.S.Dist.LEXIS 117426
    (N.D.Cal. 2018) ................................................................................................................................ 19

*IDS Life Ins. Co. v. SunAmerica, Inc.,* 103 F.3d 524, 530 (7th Cir. 1996) .......................................... 12

*LaCour v. Marshalls of California, LLC,* ___Cal.App.5th___ [2023 Cal. App. LEXIS 653, at *31]
    (Aug. 29, 2023, No. A163920). ......................................................................................................... 9

*McCowan v. Sears, Roebuck & Co.,* 908 F.2d 1099, 1106-07 (2d Cir. 1990) ..................................... 12

*Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830 (9th Cir. 1982) .......................................................... 7

*Rahman v. Gate Gourmet, Inc.,* 2021 U.S.Dist.LEXIS 225310, at *8 (N.D.Cal. Nov. 22, 2021, No.
    3:20-cv-03047-WHO). ..................................................................................................................... 18

*Sargon Enterprises, Inc. v. Browne George Ross LLP*, 15 Cal.App.5th 749 (2017) ............................. 7

*Shaw v. Superior Court,* 78 Cal.App.5th 245 (2022) .......................................................................... 18

*State ex rel. Aetna Health of California, Inc. v. Pain Management Specialist Medical Group,* 58
    Cal.App.5th 1064 (2020) ................................................................................................................... 9

*Viking River Cruises, Inc. v. Moriana,* 596 U.S. ___ [142 S.Ct. 1906, 1924-1925.] (2022) ............ 8, 9

*Volt Information Sciences v. Bd. of Trustees,* 489 U.S. 468 (1989) .................................................... 11

*Whitworth v. SolarCity Corp.,* 336 F.Supp.3d 1119 (N.D.Cal. 2018) ................................................. 19

*Wyndham Assoc. v. Bintliff*, 398 F.2d 614 (2d Cir. 1968) ...................................................................8

California Cases

*Adolph v. Uber Technologies, Inc.,* 14 Cal.5th 1104 (2023) ..................................................................6

*Avant! Corp. v. Superior Court,* 79 Cal.App.4th 876 (2000).................................................................15

*Bains v. Moores,* 172 Cal.App.4th 445 (2009) .....................................................................................15

*Daniels v. Sunrise Senior Living, Inc.,* 212 Cal.App.4th 674 (2013).......................................................9

*LaCour v. Marshalls of California, LLC,* ___Cal.App.5th___ [2023 Cal. App. LEXIS 653, at *31]
    (Aug. 29, 2023, No. A163920). ........................................................................................................9

*Marcario v. Orange,* 155 Cal.App.4th 397 (2007) .................................................................................9

*Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc.,* 44 Cal.App.5th 834 (2019) .............................9

*Sargon Enterprises, Inc. v. Browne George Ross LLP ,*15 Cal.App.5th 749 (2017)................................7

*Shaw v. Superior Court,* 78 Cal.App.5th 245 (2022)............................................................................18

*State ex rel. Aetna Health of California, Inc. v. Pain Management Specialist Medical Group,* 58
    Cal.App.5th 1064 (2020) ..................................................................................................................9

*Vandenberg v. Superior Court,* 21 Cal.4th 815 (1999)..........................................................................9

Statutes

2003 Cal Stats. ch. 906..........................................................................................................................14

Code Civ. Proc. § 1281.2 ........................................................................................................................7

Code Civ. Proc. § 1281.7 ........................................................................................................................7

Code Civ. Proc. § 1292.4 ........................................................................................................................7

Other Authorities

Cal. Const. art. 1 § 3(a)...........................................................................................................................7

Treatises

4 Moore's Federal Practice - Civil § 18.02 (2023)..................................................................................8

**Constitutional Provisions**

Cal. Const. Art. XIV, § 1 ........................................................................................................... 14

Cal. Const. art. 1 § 3(a) ............................................................................................................... 7

**California Supreme Court Decisions**

*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815 ................................................................ 9

**United States Supreme Court Decisions**

EEOC v. Waffle House, Inc. (2002) 534 U.S. 279 ................................................................... 10

Gregory v. Ashcroft (1991) 501 U.S. 452 ................................................................................. 11

Metro. Life Ins. Co. v. Massachusetts (1985) 471 U.S. 724 .................................................... 10

Murphy v. NCAA (2018) ___U.S.___ [138 S.Ct. 1461] ........................................................... 10

New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co. (1995) 514 U.S. 645 ..................................................................................................................... 11

New York v. United States (1992) 505 U.S. 144 ...................................................................... 10

Printz v. United States (1997) 521 U.S. 898 ....................................................................... 10, 11

Shelby County v. Holder (2013) 570 U.S. 529 ......................................................................... 10

United States v. Locke (2000) 529 U.S. 89 ............................................................................... 11

**United States Circuit Court of Appeals Decisions**

Californians For Safe & Competitive Dump Truck Transp. v. Mendonca (9th Cir. 1998) 152 F.3d 1184 ........................................................................................................................... 11

*Hawkins v. Cintas Corp.* (6th Cir. 2022) 32 F.4th 625 ............................................................... 9

Lockyer v. Mirant Corp. (9th Cir. 2005) 398 F.3d 1098 ..................................................... 13, 15

*Welch v. My Left Foot Children's Therapy, LLC* (9th Cir. 2017) 871 F.3d 791 ........................ 9

**United States District Court Decisions**

United States v. Cancer Treatment Centers of Am. (N.D. Ill. Nov. 7, 2002) No. 99 C 8287, 2002 U.S. Dist. LEXIS 21681, 2002 WL 31497338 ................................................................... 10

Pursuant to the Court's order entered August 23, 2023 (dkt. 45), Plaintiff William Dean Raymond, as lawfully delegated representative of the California Labor & Workforce Development Agency, hereby submits further briefing on "any of the arguments raised in the Joint Status Report and in this order." *Id*. at 4:12-16, 6:19-21.

### A. CompuCom Violates This Court's Order by Briefing Dismissal Arguments Raised Neither in the Order Nor in the Joint Status Report.

When the Court stayed this action pending *Adolph v. Uber Technologies, Inc.,* 14 Cal.5th 1104 (2023), it required that once *Adolph* issued, "the parties must file a Further Joint Status Report regarding whether further briefing of the motion to dismiss is needed." *See*, Order (dkt. 42) at 7:19-20. The parties duly filed the Report after *Adolph* was decided. *See*, Status Report (dkt. 44). In that Status Report, Plaintiff explained why each of the arguments previously raised by CompuCom in support of dismissal had failed under the controlling authority of *Adolph*. *Id*. at 2:8-4:3. By contrast, CompuCom only discussed its request to maintain a stay of the representative action. *Id*. at 5:16-7:16. The Court's recent order confirmed, noting "CompuCom does not address the pending motion to dismiss." *See*, Order (dkt. 45) at 3:1.

When the Court then authorized further briefing only on "any of the arguments raised in the Joint Status Report and in this order," the Court plainly limited CompuCom's supplemental briefing only to those arguments as to which CompuCom had previously raised and as to the stay issue on which it had requested supplemental briefing. *Id*. at 4:12-16, 6:19-21.

In violation of that order, CompuCom's supplemental brief spends more than 7 of its 14 pages arguing new grounds for dismissal based on the frivolous argument that *Adolph* is somehow preempted by the FAA. Below, Plaintiff offers only an abridged explanation of why those arguments fail, and requests that the Court grant further briefing on this issue only if it is inclined to entertain these untimely arguments.

### B. CompuCom's Preemption Arguments Fail.

CompuCom now argues that *Adolph* is preempted by the FAA. In CompuCom's telling, *Adolph* requires representative PAGA claims to be filed in court, CompuCom's arbitration

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.*   Case No. 2:21−CV−02327−KJM−KJN
Page 6

agreement requires waiver of representative PAGA claims, and failing to enforce that arbitral waiver of representative PAGA claims interferes with the FAA's objectives.

The first problem with CompuCom's arguments is that *Adolph* says nothing about requiring representative PAGA claims to proceed in court, as that issue was not before the Court in *Adolph*. CompuCom cites to no language in *Adolph* that requires representative PAGA claims to be filed in court and to remain pending while individual arbitrations proceed. Instead, that procedure is merely part of the procedural context in *Adolph*.

The source of the rule CompuCom claims is preempted is neither *Adolph* nor PAGA. It is instead the California Constitution and the California Arbitration Act (which governs in State Court, where this action was originally filed), which authorize California litigants to file even purportedly arbitrable claims directly in court and thereby test the enforceability of any agreement to arbitrate. *Sargon Enterprises, Inc. v. Browne George Ross LLP*, 15 Cal.App.5th 749, 766-68 (2017); Cal. Const. art. 1 § 3(a); Code Civ. Proc. §§ 1292.4, 1281.7, 1281.2. CompuCom's failure to correctly state the rule of law to which it objects, or identify correctly the source of that rule of law, or explain how those authorities might be preempted by the FAA, means CompuCom has failed to demonstrate that "requiring litigation to compel arbitration undermines the agreement of the parties." *See*, Def. Supp. Brief (dkt. 46) at 6:2-3.

Notably, while *Adolph* was a new authority at the time the parties filed their Joint Report, neither the California constitutional right to petition in court nor the relevant provisions of the California Arbitration Act authorizing challenging arbitration agreements in court is "new" authority that might justify CompuCom's untimely attempt to seek reconsideration of the dismissal question it previously failed to brief. *Compare*, *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 834 (9th Cir. 1982) (party may seek to reconsider prior interlocutory orders only on showing that "the evidence … was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice").

The second problem with CompuCom's preemption argument is that CompuCom relies on the notion that the FAA requires that an individual arbitration be "severed" from the

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.*   Case No. 2:21−CV−02327−KJM−KJN
Page 7

representative action. Yet the best CompuCom could offer in support was to note that the two U.S. Supreme Court decisions cited in *Adolph* on this issue do not explicitly state that the arbitration remains part of the district court action, and that the U.S. Supreme Court said that an order compelling arbitration resulted in "bifurcated proceedings." *See*, Def. Supp. Brief (dkt. 46) at 6:16-7:15. Yet the fact that the U.S. Supreme Court characterized the arbitration as "bifurcated proceedings" *is in fact* an explicit statement that arbitration remains part of the action and is not severed. Moore's Federal Practice explains:

> Technically, an order of separate trials [*i.e.* bifurcation] is different from an order of severance. Severance is the remedy prescribed by the rule governing misjoinder and nonjoinder of parties when the plaintiff joins parties who do not satisfy permissive party joinder requirements. [fn.] The claims against these misjoined parties are severed and pursued in a separate action or actions. [fn.] An order of separate trials, on the other hand, does not result in the filing of separate cases. Instead, it simply leads to separate factual inquiry of claims or issues in the context of a single, properly joined case. No matter how many separate trials the court may order, they remain part of a single case. [fn.]

*See*, 4 Moore's Federal Practice - Civil § 18.02 (2023), citing, e.g., *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) (Fed. R. Civ. P. 21 severance creates separate, independent suits). When the U.S. Supreme Court said an order compelling arbitration yields "bifurcated proceedings," instead of using the distinct concept of severance into separate actions, the U.S. Supreme Court mean what it said. *Adolph*'s interpretation of the FAA is correct under controlling precedent, as CompuCom has inadvertently demonstrated.

Third, there is no reason why permitting representative PAGA proceedings to remain in court, stayed or otherwise, while individual PAGA arbitrations occur, would interfere with the FAA's objectives or otherwise yield preemption.

The *Iskanian* rule invalidating waivers of representative PAGA claims "remains valid" and "is not preempted by the FAA." *Viking River Cruises, Inc. v. Moriana,* 596 U.S. ___ [142 S.Ct. 1906, 1924-1925.] (2022). As a result, the arbitration agreement's waiver of representative PAGA claims is unenforceable under *Viking River* and there is nothing about the arbitration agreement here that requires something other than what *Adolph* permits.

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.* Case No. 2:21−CV−02327−KJM−KJN
Page 8

Moreover, even if the arbitration agreement required waiver of the State's claims, the State may not be bound by an arbitration agreement without its consent. *Id.* at 1918. The State has not agreed to arbitration here, and the Plaintiff has not agreed to arbitration in his representative capacity as the State's agent, such that the State is not bound by the Plaintiff's individual arbitration agreement. *See*, *e.g.*, *State ex rel. Aetna Health of California, Inc. v. Pain Management Specialist Medical Group,* 58 Cal.App.5th 1064, 1069-1071 (2020) ("'the State cannot be compelled to arbitrate this qui tam IFPA action because it is not a signatory to the contracts'"); *Daniels v. Sunrise Senior Living, Inc.,* 212 Cal.App.4th 674, 679 (2013) (family member of decedent who signed arbitration agreement in representative capacity bound in that capacity, but not in individual capacity); *Welch v. My Left Foot Children's Therapy, LLC,* 871 F.3d 791, 800 (9th Cir. 2017) (FCA relator may not be compelled to arbitrate government's claims based on agreement signed in individual capacity); *Hawkins v. Cintas Corp.*, 32 F.4th 625, 630-637 (6th Cir. 2022) (same under ERISA).

There is also no basis for enforcing the arbitration agreement, and by extension the waiver of representative PAGA claims, against the State as a non-signatory. *See, Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc.,* 44 Cal.App.5th 834, 840-841 (2019).

Because the State is not bound by the arbitration agreement, the State is also not bound by the outcome of arbitration, such as if the arbitrator were to improperly order a waiver of the representative PAGA claims based on the arbitration agreement. *Vandenberg v. Superior Court,* 21 Cal.4th 815, 824 (1999) (under California Constitution, arbitrations give rise to non-mutual claim preclusion as to third parties); *see*, *also*, *Marcario v. Orange* 155 Cal.App.4th 397, 403 (2007). Moreover, because Plaintiff was not deputized by the State when he consented to the arbitration agreement, there is no privity between Plaintiff and the State as to that arbitration; "An LWDA statutory proxy acting without authority cannot be said to be in privity with her principal." *LaCour v. Marshalls of California, LLC,* ___Cal.App.5th___ [2023 Cal. App. LEXIS 653, at *31] (Aug. 29, 2023, No. A163920).

While CompuCom makes grandiose claims about its arbitral waiver of representative PAGA claims serving federal policies under the FAA, the FAA was not originally intended to

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.*                                    Case No. 2:21−CV−02327−KJM−KJN
Page 9

govern disputes between the government (acting in its law enforcement capacity) and private employers. *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 294 (2002) (EEOC not precluded from seeking victim-specific relief where victim signed arbitration agreement). Instead, the FAA's focus is on arbitration of disputes between parties involving their own rights, not the rights of a public enforcement agency. In the same vein, the FAA was not intended to preempt policies that vindicate the enforcement of *qui tam* suits brought on behalf of the state. *See, e.g., United States v. Cancer Treatment Centers of Am.,* No. 99 C 8287, 2002 U.S. Dist. LEXIS 21681, 2002 WL 31497338, at *2 (N.D. Ill. Nov. 7, 2002) (holding qui tam action under FCA is not subject to arbitration agreement).

There are constitutional separation of powers concerns here that further complicate the preemption analysis. "It is incontestable that the Constitution established a system of dual sovereignty." *Printz v. United States,* 521 U.S. 898, 918 (1997) (internal citations omitted). "Although the States surrendered many of their powers to the new Federal Government, they retained 'a residuary and inviolable sovereignty.'" *Id.* at 918-919 (quoting Federalist No. 39). "The Framers' experience under the Articles of Confederation had persuaded them that using the States as the instruments of federal governance was both ineffectual and provocative of federal-state conflict." *Id.* at 919 (citing Federalist No. 15). The "price of union" was preservation of States as independent political entities, including specifically the power to make laws and enforce them with "coercive sanctions." *Id.*; *see also, New York v. United States,* 505 U.S. 144, 160-166 (1992) (discussing legislative history underlying federalist structure of federal Constitution). It bears noting that those constitutional concerns are not only significant, but also recently ascendant. *See, e.g., Shelby County v. Holder,* 570 U.S. 529, 542-545 (2013) (summarizing operative 10th Amendment and federalism principles in course of holding unconstitutional the preclearance requirements of the Voting Rights Act of 1965); *Murphy v. NCAA,* ___U.S.___ [138 S.Ct. 1461, 1475-1481] (2018) (Congress violated 10th Amendment and commandeered state legislatures by prohibiting states from permitting sports betting). Labor law enforcement falls squarely within the State's police powers. *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 756 (1985) ("States possess broad authority under

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.*   Case No. 2:21−CV−02327−KJM−KJN
Page 10

their police powers to regulate the employment relationship to protect workers within the State."). A state's authority over its law enforcement activities is central to state sovereignty. *Printz*, 521 U.S. at 928 ("It is an essential attribute of the States' retained sovereignty that they remain independent and autonomous within their proper sphere of authority").

Here, PAGA represents a sovereign decision by the State of California about how and to whom to delegate the execution of police powers reserved to it under the United States Constitution. Congress will not be lightly deemed to have intended to interfere with that decision. *Gregory v. Ashcroft,* 501 U.S. 452, 470 (1991) (where Congress acts pursuant to its Commerce Clause powers, and where the statutory text is ambiguous, the Supreme Court "will not attribute to Congress an intent to intrude on state government functions…"); *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca,* 152 F.3d 1184, 1186 (9th Cir. 1998) ("[S]tate laws dealing with matters traditionally within a state's police powers are not to be preempted unless Congress's intent to do so is clear and manifest"); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654-55 (1995) ("where federal law is said to bar state action in fields of traditional state regulation, we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."); *United States v. Locke* (2000) 529 U.S. 89, 108 (where Congress legislates "in a field which the States have traditionally occupied" starting assumption is "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress").

CompuCom has failed to meet its heavy burden under conflict preemption to show that any California rule of law applicable here "would undermine the goals and policies of the FAA." *Volt Information Sciences v. Bd. of Trustees,* 489 U.S. 468, 478 (1989).

### C. A Stay Is Discretionary, Not Mandatory.

CompuCom argues that this Court should disregard controlling Ninth Circuit precedent cited by the Court, which holds that district courts retain the discretion to stay where not all claims are arbitrable. *See*, Order (dkt. 45) at 3:8-11 (citing *Forrest v. Spizzirri,* 62 F.4th 1201,

Brief in Opposition to Stay of Representative PAGA Action
*Raymond v. CompuCom Systems, Inc., et al.*  Case No. 2:21−CV−02327−KJM−KJN
Page 11

1204 (9th Cir. 2023), *cert.* filed, No. 22-1218 (Jun. 16, 2023) (review sought on different issue). The decisions from other Circuits cited by CompuCom offer no support for its position.

The first case cited by CompuCom, *McCowan v. Sears, Roebuck & Co.,* 908 F.2d 1099, 1106-07 (2d Cir. 1990), has been "repudiated" by the Second Circuit. *IDS Life Ins. Co. v. SunAmerica, Inc.,* 103 F.3d 524, 530 (7th Cir. 1996) (holding that the movant for a stay, in order to be entitled to a stay under Section 3 of the FAA, must be a party to the agreement to arbitrate, as must be the person sought to be stayed), citing *Citrus Mktg. Bd. v. J Lauritzen A/S,* 943 F.2d 220, 224 (2d Cir. 1991). It is unclear why this Court should follow *McCowan* rather than controlling Ninth Circuit authority, when even the Second Circuit has abandoned *McCowan*.

The second case cited by CompuCom is a district court decision that is at most persuasive authority and which is distinguishable because there, unlike here, the arbitrable claims were entirely identical to the non-arbitrable claims, such that there was complete overlap between the two proceedings. *Broussard v. First Tower Loan, LLC,* 150 F. Supp.3d 709, 719-720 (E.D.La. 2015). Notably, *Broussard* found that a discretionary stay was warranted, but suggested that a mandatory stay was not necessarily required under the circumstances, given the federal law enforcement interests involved. *Id.* at 726-730.

In short, CompuCom offers no authority that would permit this court to disregard controlling Ninth Circuit precedent. Where, as here, only the factual issue of Plaintiff's aggrieved employee status is arbitrable, and the State is neither bound by the arbitration agreement nor bound by the outcome of arbitration, then a stay is discretionary. *See*, *also*, *Collins Radio Co. v. Ex-Cell-O Corp.,* 467 F.2d 995, 1000 (8th Cir. 1972) (stay discretionary where only one count of three-count complaint was subject to arbitration).

**D. CompuCom Fails to Discuss, Let Alone Meet, Its Burden Under *Landis.***

The discretion to stay is governed by the standard first established in the seminal decision by Justice Cardozo in *Landis v. North American Co.,* 299 U.S. 248, 254–255 (1936).

*Landis* recognized courts' inherent power to stay proceedings, but in doing so severely cabined that power. "Only in *rare circumstances* will a litigant in one case be compelled to

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.*   Case No. 2:21−CV−02327−KJM−KJN
Page 12

1  stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id*. at 255 (emphasis added). In exercising its discretionary power, the trial court must "weigh competing interests and maintain an even balance." *Id*. at 244-255. To justify a stay, the stay proponent bears "the burden of making out the justice and wisdom of a departure from the beaten track" of exercising jurisdiction. *Id*. at 256. The proponent "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id*. at 255.

The balance *Landis* struck is notable for the weighty interests at stake on the side of the government, which advocated for the stay. On the one hand, there was the interest of the United States Government in securing the uniform enforcement of its laws, avoiding a multiplicity of actions and inconsistent judgments, and providing for the orderly administration of justice, with the decision in one suit likely to "settle many and simplify them all." *Id*. at 166-167. On the other hand, there was the interest of the various regulated entities in adjudicating their claims and resolving the applicability of the new law to their operations. On balance, the Supreme Court concluded that "the burden of making out the justice and wisdom of a departure from the beaten track lay heavily on the petitioners, suppliants for relief." *Id*. at 256. Accordingly, *Landis* found improper a stay of all actions pending lead case appellate review, and further held that trial courts may not adopt stays that are indefinite in duration, and may not impose on the restrained litigant the burden of seeking to lift the stay.  *Id*. at 256-257.

The leading Ninth Circuit decision applying *Landis* is *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005). *Lockyer* explained that under *Landis*, the trial court must weigh "the competing interests which will be affected by the granting or refusal to grant a stay," including "[1] the possible damage which may result from the granting of the stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating issues, proof, and questions of law which could be expected to result from a stay." *Id*. at 1110. The *Lockyer* court further noted that under the first factor, damage is deemed to result where injunction claims or statutory wage claims are alleged. *Id*.

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.*                                    Case No. 2:21−CV−02327−KJM−KJN
Page 13

1. **The Stay Threatens Irreparable Harm by Delaying State Law Enforcement as to Ongoing Violations of the California Labor Code.**

Here, the stay is actively causing irreparable harm to Plaintiff as lawfully delegated representative of the State of California. Plaintiff prosecutes this law enforcement action pursuant to a lawful and constitutional grant of executive branch authority by the California Legislature, for the benefit of the general public. *See*, Cal. Const. Art. XIV, § 1 ("The Legislature may provide for minimum wages and for the general welfare of employees and for those purposes may confer on a commission legislative, executive, and judicial powers."); *Iskanian*, 59 Cal.4th at 390 (holding PAGA does not violate California constitutional separation of powers).

The Legislature's intent with PAGA was specifically to "achieve maximum compliance with state labor laws," "ensure an effective disincentive for employers to engage in unlawful and anticompetitive business practices," and provide a "meaningful deterrent to unlawful conduct." *See*, 2003 Cal Stats. ch. 906, § 1 (PAGA legislative findings). Thus, while relief in PAGA actions is generally limited to the collection of civil penalties, PAGA is analogous to criminal statutes where the primary purpose and aspiration of the Legislature focuses on maximizing compliance with the law, and deterring illegal conduct, while remedies are generally limited to fines, probation, and imprisonment. Accordingly, the *Landis* presumption of harm applies here. *Id*. at 1110.

Moreover, this action seeks PAGA penalties for ongoing violations by CompuCom, such that there is more than just a "fair possibility" of harm to Plaintiff and to the interests of aggrieved employees and the State he seeks to protect if the stay is maintained.

2. **The Stay Threatens Irreparable Harm to Plaintiff's Ability to Investigate the Merits of the State's Claims.**

The stay is also actively causing irreparable harm to Plaintiff's ability to investigate the merits of the State of California's claims. California's Courts of Appeal have previously recognized that stays of proceedings always threaten harm to plaintiffs insofar as a stay would "'increase the danger of prejudice resulting from the loss of evidence, including the inability of

Brief in Opposition to Stay of Representative PAGA Action
*Raymond v. CompuCom Systems, Inc., et al.*   Case No. 2:21−CV−02327−KJM−KJN
Page 14

witnesses to recall specific facts, or the possible death of a party.'" *Bains v. Moores,* 172 Cal.App.4th 445, 484 (2009); quoting *Avant! Corp. v. Superior Court,* 79 Cal.App.4th 876, 887 (2000). The same is true here, scaled by the yet-to-be-ascertained number of aggrieved employees harmed by CompuCom's violations of California law. Each month that a stay of this action persists, the more likely it will be that aggrieved employees' last known contact information will no longer be valid and their memories of the facts giving rise to the unlawful conduct will fade.

As a result, the stay entered by the Court, if further maintained, will continue to cause irreparable harm to Plaintiff's ability to investigate the merits of the State's claims by locating and interviewing or surveying percipient witnesses to the misconduct alleged.

### 3. No Recognized Harm Flows to CompuCom from Continued Proceedings.

On the other side of the balance, CompuCom has identified no actual harms that will flow to it from being required to go forward with this action. Having to litigate is not a "hardship." "To be sure, if the stay is vacated [Defendant] must proceed toward trial in the suit in the district court, but being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112.

CompuCom itself admits that the only issue that overlaps between this action and Plaintiff's individual arbitration is that of whether Plaintiff suffered one or more of the alleged PAGA violations and thus is an aggrieved employee with statutory standing. As such, the only theoretical harm that might flow from concurrent proceedings, is if this action were to reach summary judgment or trial before the arbitrator reaches a decision on that issue. Yet there is no need to adjudicate Plaintiff's aggrieved employee status in this action prior to trial, unless for some reason CompuCom were to bring a dispositive motion on that issue. Unless this matter proceeds to trial before the arbitration proceeding reaches a hearing in October of 2024, there can be no cognizable threatened harm to CompuCom arising from continued proceedings and representative discovery in this action. *See*, Robinson Decl. at ¶¶ 4-8 (detailing procedural status of arbitration proceedings).

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.*     Case No. 2:21−CV−02327−KJM−KJN
Page 15

In addition, Plaintiff has a high probability of success on the merits on the issue of his aggrieved employee status at arbitration, which further undermines the notion that there is any threatened harm from proceeding with discovery in this action. Just by resort to CompuCom's initial disclosures in arbitration, Plaintiff will establish in arbitration that he has suffered at least three Labor Code violations alleged in this action:

1. Plaintiff alleges that CompuCom required off-the-clock work, including time spent "Finalizing payroll while off-the-clock." *See*, Complaint (dkt. 1-1) at 3:23-4:4. Plaintiff avers that on July 17, 2021, the day after his ostensible last day of employment, he was required to spend time working off-the-clock to finalize his payroll, with his direct manager's knowledge and approval. *See*, Raymond Decl. (filed herewith) at ¶¶ 8-10. He authenticates contemporaneous correspondence with his manager confirming the same. *Id*. at Exhibit A. The final wage statement produced by CompuCom for Mr. Raymond in arbitration confirms that CompuCom did not include wages for any hours worked on June 17, 2021, despite that day falling within the payperiod. *See*, Robinson Decl. (filed herewith) at Exhibit C (showing wages only for hours worked through June 16, 2021). The timekeeping records produced by CompuCom confirm that Plaintiff submitted hours on June 17, 2021, and yet fail to record any hours worked by Plaintiff on June 17, 2021. *Id*. at Exhibit D at p. 19.

2. Plaintiff alleges that CompuCom required off-the-clock work, including time spent "Physically moving customer equipment and files to storage while off-the-clock," and "Transporting discarded customer equipment while off-the-clock." *See*, Complaint (dkt. 1-1) at 3:23-4:7. Plaintiff avers that he was required to regularly spend time off the clock doing the same, and that his manager confirmed that these duties were simply part of the job. *See*, Raymond Decl. at ¶¶ 11-14. He authenticates contemporaneous photographs of customer equipment and files he maintained at the time of separation, as well as the receipt for the unreimbursed expense of shipping those materials to his manager at his manager's direction while off the clock after resigning. *Id*. at Exhibits B and C. Plaintiff was never paid for the time spent packaging and shipping CompuCom's property to his manager, nor was he ever paid wages for the time spent moving, organizing, or disposing of customer materials during his

Brief in Opposition to Stay of Representative PAGA Action
*Raymond v. CompuCom Systems, Inc., et al.*   Case No. 2:21−CV−02327−KJM−KJN
Page 16

employment.

      3.     Plaintiff alleges that CompuCom failed to reimburse Plaintiff for the reasonable cost of business expenses necessary to perform the duties assigned to him, including, "but not limited to" storing and disposing of customer materials and equipment. *See*, Complaint (dkt. 1-1) at 4:19-5:2. Plaintiff's contemporaneous photographs show that the customer equipment and files maintained at home occupied perhaps ten square feet of space or more at his home. *See*, Raymond Decl. at Exhibit C. Plaintiff was never reimbursed for the cost of shipping those materials to his manager. *Id.* at ¶ 12. Plaintiff was also never reimbursed for the mileage or costs associated with periodically disposing of accumulated materials at the local dump or for the lost use-value of his home arising from that requirement that he store and maintain customer materials there.

      Given Plaintiff's near certainty of success on the merits of his aggrieved employee status in arbitration as to at least these three violations, there is simply no cognizable risk of any harm to CompuCom arising from continued proceedings here.

### 4.     No Judicial Economies Flow from a Stay.

      As for the third *Landis* factor, no judicial efficiencies are likely to flow from a stay pending arbitration, for two reasons.

      First, as explained above, only the issue of Plaintiff's aggrieved employee status overlaps with arbitration and Plaintiff has a near certainty of success in prevailing on that question based on the available evidence, which CompuCom has failed to dispute. As such, discovery may go forward in this action while arbitration runs its course, and this matter may proceed to trial once arbitration concludes or Plaintiff otherwise obtains a final arbitral adjudication confirming his aggrieved employee status.

      Second, and more importantly, any claim of judicial efficiencies by CompuCom here is flatly contradicted by CompuCom's having actively fostered a multiplicity of actions here, with the apparent goal of undermining this Court's jurisdiction and running a reverse auction of the State's claims. Counsel for Plaintiff has recently learned that an overlapping action, asserting the same claims at issue here on behalf of the same aggrieved employees against the

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.*     Case No. 2:21−CV−02327−KJM−KJN
Page 17

same defendant, was filed in Riverside County Superior Court by Jason Odell Wright on November 23, 2022. *See*, Robinson Decl. at ¶¶ 17-28, Exhibit E (*Wright* docket report), and Exhibit F (*Wright* Second Amended Complaint). CompuCom is represented in that action by the same attorneys who represent it here. *See*, Robinson Decl. at ¶ 21. CompuCom has violated Local Rule 123 by failing to give this Court and Plaintiff notice of the related *Wright* case. *See, id.* at ¶¶ 27-28.

If CompuCom sincerely desired judicial efficiencies here, it could have obtained a mandatory stay of the *Wright* action. *See*, *Shaw v. Superior Court,* 78 Cal.App.5th 245 (2022) (California rule of exclusive concurrent jurisdiction applies to PAGA action, requires stay of subsequent overlapping action where invoked). CompuCom also could have removed *Wright*, as it did this action, and then similarly obtained a stay in favor of this case. *Rahman v. Gate Gourmet, Inc.,* 2021 U.S.Dist.LEXIS 225310, at *8 (N.D.Cal. Nov. 22, 2021, No. 3:20-cv-03047-WHO). Alternately, CompuCom could have removed *Wright*, and then sought to transfer and consolidate it with this action, to obtain the efficiencies that flow from complex case management by an experienced jurist.

Instead, CompuCom fostered a multiplicity of actions, maintained largely identical actions in separate judicial systems to avoid application of rules designed to avoid such inefficiencies, permitted *Wright* to remain pending and active even after individual arbitration was initiated, and scheduled a mediation and invited only the *Wright* plaintiff, all apparently with the hope that CompuCom might surreptitiously obtain a global settlement from the *Wright* plaintiff that might give rise to issue or claim preclusion in this action. *See*, Robinson Decl. at ¶¶ 17-28. As in *Gate Gourmet*, CompuCom "has offered no principled reason for choosing to settle a later-filed case." *Id*., 2021 U.S.Dist.LEXIS 225310, at *9. As in *Gate Gourmet*, CompuCom's conduct here "smacks of a 'reverse auction' leading to a collusive settlement," or so CompuCom appears to have hoped. *Id*. at *8.

As a result of CompuCom's tactics, there are now four overlapping proceedings pending: (1) Plaintiff's individual arbitration, (2) this action, (3) the *Wright* individual arbitration, and (4) the *Wright* state court action. Given that, CompuCom's claims of seeking

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.*   Case No. 2:21−CV−02327−KJM−KJN
Page 18

1  judicial efficiencies through a stay and cries of threatened harm flowing from continued
2  proceedings in this action ring hollow.

### 5. Cases Cited by CompuCom Are Not Binding and Distinguishable.

CompuCom cites a series of non-binding district court decisions in which other courts, considering other claims and other factual showings in support of and opposition to a stay, exercised their discretion to stay representative PAGA claims.

Each of those cases makes incorrect assumptions about the scope of judicial efficiencies that might flow from an individual arbitration. In both *Whitworth v. SolarCity Corp.,* 336 F.Supp.3d 1119, 1131 (N.D.Cal. 2018) and *Gray v. Conseco, Inc.*, Case No. SA CV 00-322 DOC (EEx)) 2000 U.S.Dist.LEXIS 14821, at *27 (C.D.Cal. 2000), the courts seem to assume—incorrectly—that the arbitrator's ruling on all substantive factual and legal issues as to the individual wage and hour claims will be binding on the State, and thus appear to vastly overestimate the judicial efficiencies that flow from arbitration, and to enter discretionary stays on that basis. Similarly, both *Burrola v. U.S. Sec. Assocs.,* No. 3:18-cv-00594-BEN-JLB) 2019 U.S.Dist.LEXIS 20333, at *32 (S.D.Cal. 2019), and *Hermosillo v. Davey Tree Surgery Co.*, No. 18-CV-00393-LHK, 2018 U.S.Dist.LEXIS 117426, at *68 (N.D.Cal. 2018) make that incorrect assumption explicit, and for that reason entered discretionary stays.

Moreover, each of those cases is distinguishable because none involved the showing presented here, where the plaintiff established a near certainty of prevailing on the only factual issue overlapping with the arbitration, or that the defendant had at the same time fostered a multiplicity of actions and violated its duty to give notice of related cases.

### E. Conclusion.

For the foregoing reasons, Plaintiff respectfully urges the Court to lift the stay of this action.

September 15, 2023



/s/ Brent A. Robinson
_____
Brent A. Robinson
Attorneys for Plaintiff Raymond

---

**Brief in Opposition to Stay of Representative PAGA Action**
*Raymond v. CompuCom Systems, Inc., et al.*   Case No. 2:21−CV−02327−KJM−KJN
Page 19